STATE EX REL. BOWLER, RESPONDENT, *v.* BOARD OF COUNTY COMMISSIONERS OF DANIELS COUNTY ET AL., APPELLANTS.

(No. 7,722.)

(Submitted January 24, 1938. Decided February 19, 1938.)

[76 Pac. (2d) 648.]

*Mr. David N. Nyquist,* and *Mr. George E. Hurd,* for Appellants, submitted a brief; *Mr. Hurd* argued the cause orally.

*Mr. Carl Lindquist* and *Mr. John M. Kline,* for Respondent, submitted a brief and argued the cause orally.

HONORABLE RUDOLPH NELSTEAD, District Judge, sitting in place of Mr. Justice Angstman, disqualified, delivered the opinion of the court.

This is an appeal from a judgment of the district court of Daniels county declaring the contract for county printing for the period ending December 31, 1938, awarded to the Daniels County Free Press null and void, and directing the issuance of a peremptory writ of mandate to the county commissioners, requiring them to reconvene and make a contract with the Daniels County Leader and relator, as its owner.

On December 31, 1936, the commissioners requested bids for county printing of the Daniels County Leader and the Daniels County Free Press, weekly newspapers and the only newspapers of general circulation published in Daniels county. Both news-

papers submitted bids, but no action was taken thereon by the board until the regular February meeting in 1937, at which time the contract for county printing was awarded to the Free Press.

It appears from the record that the Leader had been printed and published in Daniels county for approximately fifteen years prior to this time. During the eleven years immediately preceding the award of the contract in question the relator, as the owner of the Leader, had performed the county printing. The Free Press commenced business in Daniels county in October, 1935, and was owned and operated by M. A. Cromwell and associates until January 16, 1937, during which time Mr. Cromwell resided at Glasgow, in Valley county, and published there a newspaper called "The Glasgow Times." In January, 1937, the Free Press was sold to the defendants Hallack, and from January 16, 1937, until the contract was let by the commissioners, the Free Press was printed and published by the defendants Hallack, who resided at Nashua, in Valley county, and also published there a newspaper called "The Nashua Messenger."

In holding the contract with the Free Press null and void, the district court based its decision primarily on two grounds: (1) That relator's bid was the lower, the better, and the most responsible; and (2) that the board, in accepting the bid of the Free Press and making a contract with it for county printing, abused the discretion lodged in the board by statute and acted arbitrarily, in that the Free Press had not been printed and published continuously in Daniels county for one year immediately preceding the awarding of the contract in question.

There are nineteen specifications of error in appellants' brief, but the questions presented thereby may be basically divided into three categories: (1) The applicability of section 4605.1, Revised Codes, requiring boards of county commissioners to advertise for bids and letting contracts in excess of $1,000 to the lowest and best responsible bidder; (2) abuse of discretion by the board in awarding the printing contract to the Free Press; and (3) relator's right to bring an action in mandamus to compel the board to reconvene and annul the county's con-

tract with the Free Press and make a contract with the Leader, and with relator as its owner.

1. It appears from the evidence, and the district court so ▮▮ found, that relator presented the lowest bid. The appellant commissioners argue that section 4605.1, supra, has no application to county printing contracts, and with this contention we agree. This statute, having its origin in Chapter 8 of the Laws of 1933, was amended by Chapter 87 of the Laws of 1935, and in so far as pertinent here provides, in substance, that "no contract shall be entered into by a board of county commissioners for the purchase of any automobile, truck or other vehicle, or road machinery, or other machinery, apparatus, appliances or equipment, or materials, *or supplies of any kind,* for which must be paid a sum in excess of One Thousand Dollars ($1,000), without first publishing a notice calling for bids for furnishing the same, * * * and every such contract shall be let to the lowest and best responsible bidder."

Section 4482, Revised Codes, is a special statute providing for a complete and definite plan for awarding contracts for county printing. With the exception of certain amendments which have no bearing upon the issues in this case, this statute is substantially the same as the Act approved March 2, 1895, and which became section 4233, Political Code of 1895. Four years after the enactment of section 4605.1, supra, the county printing law (secs. 4482 et seq.), was re-enacted with certain minor changes as Chapter 118 of the Laws of 1937. This re-enactment does not affect the case at bar, for the reason that this action arose prior to the time Chapter 118 became effective, excepting that it indicates the legislative purpose and intent. Ever since 1895 it has been the law of this state that contracts for county printing shall be let to the newspaper which, in the judgment of the county commissioners, shall be most suitable for performing the work.

Relator relies upon the argument that section 4605.1 consti- ▮▮ tutes a limitation upon the power of the board vested in it by section 4482, and that the county printing contract "shall be let to the lowest and best responsible bidder." Repeal of a

256

statute or parts of a statute by implication is not favored. To make tenable the claim that an earlier statute was repealed by a later one, the two must be plainly and irreconcilably in conflict with each other. They must relate to the same subject and have the same object in view. (*Box* v. *Duncan,* 98 Mont. 216, 38 Pac. (2d) 986; *State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157.)

In *Equitable Life Assur. Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062, 1065, this court said: ''Unless there is plain indication of an intent that the general Act shall repeal the special, the latter will continue to have effect and the general words with which it conflicts will be restrained and modified accordingly.'' The same rule is also very clearly stated in *Missouri Pacific Ry. Co.* v. *Holt,* 8 Cir. 293 Fed. 155, 164: ''Specific legislation in relation to a particular class or subject is not affected by general legislation in regard to many classes or subjects, of which that covered by the specific legislation is one, unless it clearly appears that the general legislation is so repugnant to the special legislation that the legislators must be presumed to have intended thereby to modify or repeal it; but the special and the general legislation must stand together, the former as the law of the particular class or subject, and the latter as the general law upon other subjects or classes within its terms.''

We therefore conclude that the words ''or supplies of any kind,'' as used in section 4605.1, supra, were never meant by the legislature in any manner to affect the county printing law. This conclusion is supported by the additional rule of statutory interpretation that ''the particular meaning to be attached to it [word or phrase] in a given statute, * * * is to be measured and controlled by the connection in which it is employed, the evident purpose of the Act, and the subject to which it relates.'' (*Thaanum* v. *Bynum Irr. Dist.,* 72 Mont. 221, 225, 232 Pac. 528, 530; *Northern Pacific Ry. Co.* v. *Sanders County,* 66 Mont. 608, 214 Pac. 596.) In *Page* v. *New York Realty Co.,* 59 Mont. 305, 316, 196 Pac. 871, 874, appears the following language: ''Where general words follow an enumeration of particular subjects, such words must be held to include

only such objects or things as are of the same general character of those specifically mentioned."

The general words "or supplies of any kind" are not to be construed in their widest extent, but are to be held as applying only to the things of the same general kind or class immediately preceding the words, and in section 4605.1 refer to automobiles, trucks, or other vehicles, machinery, equipment, or materials used in connection therewith. It follows then that all of relator's evidence and argument as to which newspaper was the lower and better bidder have no application in this controversy, and that the admission of evidence on these points over objection of the defendants was error. Since section 4605.1, supra, does not apply, it was not necessary for the board of county commissioners to call for bids or award the contract to the lowest bidder. (*Stange* v. *Esval*, 67 Mont. 301, 306, 215 Pac. 807.)

2. Did the board abuse the discretion granted to it by law by entering into a contract with the Free Press? The relator's right must be predicated upon section 4482, which provides in part as follows: "The contract shall be let to the newspaper that in the judgment of the county commissioners shall be most suitable for performing said work." This wording of the law makes the choice entirely a matter of discretion, limited only by the following language in the statute: "It is hereby made the duty of the county commissioners of the several counties of the state of Montana to contract with some newspaper, printed and published at least once a week, and of general circulation, printed and published within the county, and having been printed and published continuously in such county at least one year immediately preceding the awarding of such contract."

It is true that a board of county commissioners is one of limited powers, and must in every instance justify its action by reference to the provisions of the law defining or granting these powers. (*Sullivan* v. *Big Horn County*, 66 Mont. 45, 212 Pac. 1105.) Nevertheless, where there is no question

of the existence of the power to do the act proposed, as in the case at bar where the legislature has for forty-three years empowered the board with the right to use its judgment in choosing the newspaper most suitable for county printing, the board may use its own discretion in selecting the course it shall pursue. The board has the control of the county's property and the management of its business and concerns. (Sec. 4465.21, Rev. Codes.) Within the scope of its powers it is supreme if the course pursued is reasonably well adapted to the accomplishment of the end proposed. (*Morse* v. *Granite County,* 44 Mont. 78, 89, 119 Pac. 286.) Courts are without power to interfere with the board's discretionary action within the scope of its authority or the exercise of powers conferred by statute on the sole ground that its action is characterized by lack of wisdom or sound discretion. The reviewing power of the courts must be exercised with caution, and, unless fraudulent, or so arbitrary as to amount to a clear and manifest abuse of discretion, the board's action is final. (15 C. J. 456.)

"The manner in which printing contracts shall be let is one of legislative or governmental policy, a question with which the courts have nothing to do." (*Hersey* v. *Neilson,* 47 Mont. 132, 145, 131 Pac. 30, 33, Ann. Cas. 1914C, 963.) It may be true that the Free Press did not possess as good equipment as the Leader. It is possible that its work in performing the county printing may be inferior to that of its competitor; but the county commissioners are the sole judges in choosing the paper which shall be most suitable for performing the work, and, if their choice is characterized by lack of wisdom, it may not on that ground be set aside by the courts.

Relator contends, however, that in view of the construction given by our court to section 4482, Revised Codes, in *Stange* v. *Esval,* supra, and in *State ex rel. Vickers* v. *Board of County Commrs.,* 77 Mont. 316, 250 Pac. 606, 609, the Free Press was not qualified to receive the contract for county printing, for the reason that it was not a newspaper of general circulation, *printed* continuously in Daniels county at least one year immediately preceding the awarding of the contract. Re-

lator offered no evidence in support of his contention that the Free Press is not a paper of general circulation. From the defendants' case it appeared that the Free Press had a general circulation of over 300 subscribers in Daniels county, and that it reached every community within the county. The size of the subscription list or of the paper itself does not affect its character as a newspaper of general circulation. We believe the correct rule is stated by the supreme court of Iowa, in *Burak* v. *Ditson*, 209 Iowa, 926, 229 N. W. 227, 228, 68 A. L. R. 538, as follows: ''A study of the decisions bearing on the question before us suggests the following criteria: First, that a newspaper of general circulation is not determined by the number of its subscribers, but by the diversity of its subscribers. Second, that, even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of 'general circulation.' (See *Olson* v. *Bibb Co.*, 117 Minn. 214, 135 N. W. 385, Ann. Cas. 1913D, 877 (with cases cited); *Legal Ledger* v. *Hodgson*, 176 Minn. 635, 636, 222 N. W. 646; *Culclasure* v. *Consolidated Bond & Mortgage Co.*, 94 Fla. 764, 114 So. 540; *Hesler* v. *Coldron*, 29 Okl. 216, 116 Pac. 787; *Lynch* v. *Durfee*, 101 Mich. 171, 59 N. W. 409, 24 L. R. A. 793, 45 Am. St. Rep. 404; *Puget Sound Pub. Co.* v. *Times Printing Co.*, 33 Wash. 551, 74 Pac. 802.)''

The main contention, however, advanced by the relator is that the Free Press was not a newspaper *printed* continuously in Daniels county for one year prior to the time the contract was awarded. The Free Press was first issued at Scobey, Daniels county, in October, 1935, and, since the contract was awarded to the Free Press and the relator has the burden of proof, it must be presumed that during the period from the time it commenced business until October 15, 1936, the Free Press complied with the law relating to county printing, and was printed in Daniels county. Concerning the printing of the paper subsequent to October 15, 1936, we quote from the findings of the district court: ''From October 15, 1936, through

February 4, 1937, there were seventeen issues of the Free Press; all but one, that of December 17, being of eight pages. Of these eight pages, four were patent insides printed outside of Daniels county. Of the remaining four pages at least two each week were printed entirely in Valley county at either the office of the Glasgow Times or the Nashua Messenger. All the editing, composing, making up, printing and impression of the type on these pages, and all mechanical work, was done in Valley county. Of the remaining two pages of each issue, a part was written and the type set in Valley county; the work of impressing the type on the paper being done in Daniels county. Of the issue of December 17, 1936, there were ten pages; four pages, 3, 4, 7 and 8 were patent insides printed outside of Daniels county; four of the remaining six pages, that is, pages 1, 2, 9 and 10, were printed in their entirety in Valley county in the office of the Glasgow Times; all the editing, composing, making up, printing and impression of the type on these pages, and all mechanical work, was done in Valley county. This leaves two pages, pages 5 and 6, on which the type was impressed on paper in Daniels county; on these two pages a part was impressed from type set in Valley county at the office of the Glasgow Times. Throughout these seventeen issues most, if not all, the matter printed in its entirety in Valley county was written there also; the identical articles, editorials, advertisements, and news items, and, in some instances, the identical pages, appear in issues of either the Glasgow Times or the Nashua Messenger. As to the two pages of each issue on which the type was impressed on paper in Daniels county: On these pages appear articles and news items, some of them of local Valley county interest, reproduced from either The Glasgow Times or the Nashua Messenger, and made to seem as though originating in Daniels county.''

In *State ex rel. Vickers* v. *Board of County Commrs.*, supra, this court held that section 4482 will never be given so narrow a construction that the use of patent insides will be prohibited, and in that connection uses the following language: ''These

patent insides do not affect the status of the newspaper so long as the paper otherwise meets the necessary requirements of a newspaper of general circulation, as the patent portions might be omitted and the newspaper still meet all of the requirements.''

In ordinary understanding, a newspaper is a publication, usually in sheet form, intended for general circulation and published regularly at short intervals, containing intelligence of current events and news of general interest. (46 C. J. 19.) Assuming that the Free Press at the time the contract was awarded had consisted of the two pages printed in Daniels county and six patent insides furnished, as relator testified, by the Western Newspaper Union, it could hardly be questioned that, under the decision in the *Vickers Case,* the Free Press was a newspaper qualified to receive the printing contract. We are unable to discern any difference between patent insides which may be printed outside of the county or state, and the matter printed at Glasgow and Nashua. The evidence discloses that news items, articles, and editorials of the Free Press were printed and published in Daniels county in every issue of the paper during the period in question by the relator. Without the patent insides and without the matter printed at Glasgow and Nashua, the Free Press was still a newspaper. It was a newspaper printed and published continuously in Daniels county at least one year immediately preceding the award of the printing contract. We conclude, therefore, that the board of county commissioners of Daniels county did not abuse the discretion vested in it by law, and that the contract with the Free Press is legal and valid.

3. Relator is not entitled to a writ of mandate. The writ issues to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. (Sec. 9848, Rev. Codes.) It is elementary that since the board has acted, its discretion cannot be controlled by mandamus, and the court is not authorized to substitute its judgment for that of the board. (*State ex rel. Scollard* v. *Board of Examiners for Nurses,* 52 Mont. 91, 98, 156 Pac. 124.)

The judgment of the district court is, therefore, reversed with direction to dismiss the action.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied March 7, 1938.