SHELLEY, Appellant, *v.* NORMILE et al., Respondents.

(No. 7,962.)

(Submitted July 7, 1939.  Decided July 17, 1939.)

[94 Pac. (2d) 206.]

118

*Mr. Wellington D. Rankin, Mr. S. C. Ford, Mr. A. P. Acher* and *Mr. Sam D. Goza, Jr.*, for Appellant, submitted an original and a reply brief; *Mr. Rankin* and *Mr. Ford* argued the cause orally.

*Mr. Claude A. Johnson, Mr. John G. Brown* and *Mr. William A. Brown*, for Respondents, submitted a brief; *Mr. Johnson* and *Mr. John G. Brown* argued the cause orally.

*Mr. H. A. Simmons* and *Mr. H. A. Simmons, Jr.*, for Intervener H. H. Harrison, submitted a brief and argued the cause orally.

Opinion: PER CURIAM.

This is a taxpayer's suit by one O. H. P. Shelley, a taxpayer of Carbon county and the proprietor of the Carbon County News, a newspaper published at Red Lodge, and is against the county commissioners and other officials of Carbon county as such. H. H. Harrison, publisher of the Bridger Times, is intervener.

The cause was tried to the court on appropriate pleadings. No better statement of the case can be made than that contained in the findings of fact made by the trial court, which were as follows:

"I. On November 17, 1938, * * * The Board of County Commissioners of Carbon county, a political subdivision of the State of Montana, in writing invited the Carbon County News, the Fromberg Herald, and the Bridger Times, qualified newspapers published in Carbon county, to submit proposals for furnishing county printing and supplies to the county for the succeeding two years, all to be in accordance with and at not more than the prices specified in what is known as the Printing Code, to-wit: Chapter 118 of the Laws of the Twenty-fifth (1937) Legislative Assembly.

"II. That each of the newspapers invited were fully qualified under the qualifications set forth in the Printing Code, to contract with the county for printing and printing supplies.

"III. The Carbon County News submitted a proposal, the Bridger Times and the Fromberg Herald jointly submitted a proposal. The proposal of the Bridger Times and Fromberg Herald would save the county approximately $3,000, over the proposal of the Carbon County News. This, on a contract estimated at $10,000.

"IV. Some question arose as to a joint bid and the Bridger Times, a newspaper fully qualified, that has been printed and published continuously in Carbon county for more than twenty-five years, was unanimously selected by the board to have the contract. Accordingly, the county commissioners entered into a contract with that paper for printing and printing supplies

for Carbon county for a period of two years from and after the expiration of the county's present contract, to-wit: From and after January 1, 1939. It was contemplated by the commissioners, specified in their invitation to the newspapers for proposals and at all times the mutual intention, agreement and understanding between the parties to the contract, to-wit: the Bridger Times and Carbon county, that the contract and the general intent of the contract was to be in accordance with the terms and provisions of the so-called Printing Code or printing law of the State of Montana, to-wit: Chapter 118 of the Laws of the Twenty-fifth (1937) Legislative Assembly, and the contract was based upon the statute, nor could it have been otherwise.

"V. In submitting the proposal of the Bridger Times and the Fromberg Herald, a printed copy in pamphlet form of the Printing Code of Montana was attached thereto, since the proposal was on a basis of a percentage of the prices of the Code. A pamphlet printed copy of the Printing Code, prepared by the same company that furnished the pamphlet attached to the proposal was likewise attached to the contract, although entirely unnecessary since the contract was on a basis of the prices set forth in the statute. After this action was instituted, the defendant county commissioners and clerk and recorder, for the first time discovered that the printed pamphlet copy of the laws attached to the contract did not conform to the printed copy attached to the proposal, nor to the code, as printed in the 1937 session laws. There can be no question from the testimony of all of the witnesses that this was a mistake, that it was the clear intent and purpose of all of the parties to the contract, easily ascertainable and so understood by all parties; that the contract was on a basis of the Printing Code and was to be at all times governed and controlled by Chapter 118 of the Laws of the Twenty-fifth Legislative Assembly (1937), and I do find that it could not be otherwise. It amounts to a mistake in the printed part of the contract, which is wholly inconsistent with the nature of the contract and the mutual intention of the

parties, and amounts to a failure to express the real intention of the parties. To interpret it otherwise would be to violate the intention of the parties and the statute. All of this is undisputed in the evidence and is clearly shown by the circumstances surrounding the call for proposals, the attempt of the county commissioners to get the greatest saving for their county, and the matter to which the contract relates.

"VI. The defendant county commissioners entered into a contract with the Bridger Times on December 14, 1938. This contract is a valid, existing contract between the parties named, but it should be corrected so that the exhibit attached to it will be a correct copy of the Printing Code, as was the intention and as agreed between the parties. Under this contract there will be a saving to the county for the ensuing two years on printing and supplies of approximately $3,000 on an estimated $10,000 contract, over the county's previous contract.

"VII. There is no pleading in this case of fraud, abuse of discretion or wrongful conduct, and the court does find from the evidence that there was no fraud, abuse of discretion or wrongful conduct on the part of the Board of County Commissioners or the Bridger Times.

"VIII. No cause of action is stated as to the defendants George J. McDonald, as County Clerk of Carbon County, and Julius E. Schroeder, as County Treasurer of Carbon County."

The court made conclusions of law to the following effect: (1) That the defendants were not required to advertise for bids; (2) that there was no pleading or evidence of fraud, misconduct or abuse of discretion; (3) that the contract with the Bridger Times is a valid one entered into with the intent that it should be governed by the Printing Code; and (4) that there was a mistake and it should be corrected, and that the proceedings should be dismissed. Judgment was entered for the county commissioners, and plaintiff appealed.

The specifications of error attack the judgment generally on the ground that the court erred in deciding (a) that the contract with the Bridger Times was valid; (b) that the Bridger

Times was a newspaper qualified to perform the county printing; (c) that the court erred in purporting to reform the contract; (d) that it erred in failing to require the county commissioners to accept the bid of the Carbon County News; (e) in failing to find that the commissioners abused their discretion in ignoring its bid, and (f) in entering into the contract with the Bridger Times.

The assignments were argued by appellant under separate heads as follows: (I) ''The Carbon County News submitted the only qualified and valid bid for the county printing and the county commissioners had no authority except to accept its proposal.'' (II) ''The proposed contract with the Bridger Times provides for payment of prices for county printing in excess of the statutory rate and is illegal.'' (III) ''Since the contract with the Bridger Times provides for payments in excess of the statutory rate it was and is void.'' (IV) ''The Bridger Times is not a qualified newspaper because it does not have a general circulation.'' (V) ''Injunction is a proper remedy in this case.'' (VI) ''The contract with the Bridger Times being illegal and void, it could not be reformed.''

The applicable law is found in Chapter 118, Laws of the Twenty-fifth Legislative Session, 1937. The pertinent parts of that Act are the same as section 4482 et seq., Revised Codes. The old law was construed by this court in many of the particulars involved here, in the case of *State ex rel. Bowler* v. *Board of County Commrs.*, 106 Mont. 251, 76 Pac. (2d) 648. What was said in that case is so obviously correct that we do not hesitate to rely upon it here. It was there held that county commissioners were not required to call for bids to do the county printing, or to award the contract to the lowest bidder. We think that case is ample authority for holding that the bid of the Carbon County News was properly rejected, and, therefore, that the first ground argued is not well taken. The statute needs no construction. It merely states that it is the duty of the county commissioners to contract with some newspaper printed and published at least once a week, and of general

bona fide and paid circulation, with second class mailing privileges, printed and published within the county for at least twelve months, to do all of the printing therein enumerated. There is nothing said about advertising for bids, and certainly nothing about awarding the contract to the lowest bidder. All of these matters were discussed in the *Bowler Case,* supra.

The second assignment discussed in plaintiff's brief, to the ▮▮▮▮ effect that the contract with the Bridger Times provides for payment of prices in excess of the statutory rate, tenders a question of fact. As will be observed, the court found that the charges contained in the contract were legal charges and in accordance with the statute. A careful study of the record fails to disclose that the court was in error.

Complaint is made that the bid for blank books under sections 13 and 14 of Chapter 118, Laws of 1937, was in excess of the statutory rate. The bid contained this paragraph: "All such books may be furnished to the County at producer's cost delivered to the court house in Red Lodge, Montana, plus a commission to The Bridger Times at fifteen per cent, of actual cost, said books to be procured by The Bridger Times at the cheapest Montana quoted price."

The evidence does not show that 15 per cent. commission added to the cheapest Montana quoted price would exceed the maximum rates provided in sections 13 and 14 of the Act. If, however, the statutory rate were exceeded then the statutory rate would control. In other words, there is an automatic maximum price written into the contract by the statute which is a part thereof.

It is asserted by plaintiff that the Bridger Times bid was based on a column inch price for legal notices, and that such was in excess of the statutory rate. The fact is that the statute is a part of the contract and as such was controlling. The Act does provide that the legal rate for such printing should not be more than $1.50 per folio for the first insertion (a folio is 100 words; sec. 4899, Rev. Codes), and the contract provided for an inch price. Evidence was adduced to show that the inch

price did not exceed the folio price, and, in fact, was less. We do not attach any importance to this by reason of the fact that the statute, being part of the contract, is bound to control it so as to prevent a charge of more than the legal price. The fact that the matters are expressed in a manner different from that contained in the statute, is of no particular importance. "The law respects form less than substance." (Sec. 8757, Rev. Codes; *State ex rel. Sparrenberger* v. *District Court,* 66 Mont. 496, 214 Pac. 85, 33 A. L. R. 464.) We are, therefore, of the opinion that the finding of the court in that respect was not erroneously made, and the contract with the Bridger Times was not void, which takes care of the next subject of objection.

The assertion was made that the Bridger Times is not a quali-■ fied newspaper. Evidence was taken on this subject. It appeared that the paper has been in existence and published for twenty-five years last past; that it has four pages of general news and advertising printed in its own plant; that it circulates over the county generally, but its main circulation is in and around Bridger. It seems beyond cavil that the paper comes clearly within the construction of the requirements as construed in the *Bowler Case.* Other applicable cases on the subject of qualifications of a newspaper in such matters are so numerous and so generally in line with the *Bowler Case* that it is unnecessary to enumerate them.

It will be observed that the court found on the question of ■ an error which occurred in the pamphlet attached to the contract. It found that a pamphlet containing the proper schedules was attached to the proposal, but when the contract was drawn, through mutual error the wrong pamphlet was attached thereto. The undisputed evidence shows that the pamphlet accompanying the bid as well as the pamphlet attached to the contract were both erroneous. The evidence on this point is very clear and convincing. We agree with the court that the pamphlet was really an unnecessary appendage, and was unnecessary because both the bid and the contract itself were on the basis of a percentage of the prices set forth in the statute,

as to everything but official publications, legal advertising and blank books; and because, as to the latter items, the maximum prices fixed by the statute must in any event not be exceeded.

A study of the record is convincing of the intention of the parties. The contract itself is fair and legal upon its face. It really needs but slight interpretation. It must be considered in the light of several sections of the Revised Codes. We quote the following ones as applicable:

"Section 7527. A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

"Section 7531. When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded."

"Section 7540. If the terms of the promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."

"Section 7541. Particular clauses of a contract are subordinate to its general intent."

"Section 7542. Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

"Section 7543. Repugnancies in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract."

"Section 7544. Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected."

"Section 7534. A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done, without violating the intention of the parties."

"Section 7538. A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

"Section 7545. In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party."

It is plain that it was the intention of all parties to make a contract strictly within the law, and the court so found. It seems to us that everyone involved is fully protected by the contract. What slight uncertainty there was in the contract by reason of the error made was removed by the court's finding and the judgment. We see nothing to justify this court in condemning the contract and holding it void.

The question of the mandatory injunction which plaintiff seeks to invoke to require not only the cancellation of the contract but the giving of another contract to him, seems to us to be too fundamentally erroneous to justify serious consideration. The law requires the commissioners to make a contract. It sets out in very general terms the necessary conditions. If a contract is sought to be upheld that is not in accordance with the law, naturally it should be stricken down by the courts, but even in that event the court could not order the acceptance of some other proposal and dictate a contract.

This court has repeatedly adhered to the theory that public officials and boards, when acting within their statutory powers and authority, are immune from interference by the courts.

That protection applies to a contract made in accordance with the statute, and likewise prevents the court from making a contract for such an officer or board and requiring them to accept it. The Montana cases on that subject are so numerous and the rule is so well known that the subject has become elementary.

The findings of fact and conclusions of law are correct. The judgment based thereon is right and is affirmed.

MR. JUSTICE ANGSTMAN:

I concur in the result, but only by accepting as *stare decisis* the conclusion in the case of *State ex rel. Bowler* v. *Board of County Commrs.*, 106 Mont. 251, 76 Pac. (2d) 648, to the effect that contracts for county printing may be let without calling for bids. My views on that point are set forth in the dissenting opinion in the case of *Miller Insurance Agency* v. *Porter*, 93 Mont. 567, 20 Pac. (2d) 643.

Rehearing denied October 10, 1939.