## No. 21646.

MARY RECTOR ON BEHALF OF HERSELF AND ALL OTHER
SIMILARLY SITUATED PLAINTIFFS *v.* NORTHGLENN
METROPOLITAN RECREATION DISTRICT, ET AL.
(404 P.2d 534)

Decided July 26, 1965.

R. PAUL BROWN, for plaintiffs in error.

ROBERT J. PICKELL, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the
Court.

THIS is a class action challenging a special bond elec-
tion held by the Northglenn Metropolitan Recreation
District.

The parties will be referred to as they appeared in the trial court, plaintiffs in error as plaintiffs and defendants in error as defendants.

The pertinent chronology of events is as follows:

On June 8, 1964, the Board of Directors of the Recreation District adopted a resolution that a special election of the qualified taxpaying electors of the District would be held on July 14, 1964, upon the question as to whether the District should issue its negotiable coupon bonds in a principal amount not exceeding $750,000. Pursuant to this resolution, notice of the election was published four times in the Brighton Blade, a "legal newspaper" located outside of the District and published in the City of Brighton, the County Seat of Adams County. Both the resolution and the notice indicated that there would be only one polling place.

On July 10, 1964, Mary Rector, on behalf of herself and all others similarly situated, filed her verified complaint seeking to enjoin the election and to have judgment declaring the election procedure illegal and void. Her grounds were that the one polling place provided was not in accordance with the statutory requirements and that the Brighton Blade was not a newspaper of "general circulation" under the special statute involved here. She was unsuccessful in the trial court in hearings conducted before the election on the injunction and after the election on the merits of her complaint and seeks relief by writ of error.

It appears that at the time of the election in question there were at least 3500 qualified voters in the District and that the bond issue carried by a majority of about 3 to 1 with some 1100 persons voting.

Since, in our view, in spite of the number of persons who actually voted, the statutes relating to polling places were not correctly followed, and, the judgment must be reversed on that ground, we will not comment as to whether a "legal newspaper" as defined by C.R.S.

1963, 109-1-1 et seq. is also one of "general circulation" required by C.R.S. 1963, 89-12-2(6).

As stated earlier, one polling place was provided by authority of the District under and by virtue of a statute that states:

"The election boards (of this type of district) shall conduct the election in the manner prescribed by law for the holding of general elections, * * *." (Part in parenthesis supplied.) C.R.S. 1963, 89-12-27.

And, our general election laws provide in this regard:

"Section 101. — *Establishing precincts and polling places.* — (1) The boards of county commissioners of the several counties shall divide their respective counties into as many election precincts for all general, primary, and special elections as they may deem expedient for the convenience of electors of the county, and shall designate the place in each precinct at which elections are to be held. * * *

"(a) In counties which use paper ballots, the commissioners shall establish at least one precinct for every five hundred registered electors.

"(b) In counties which use voting machines, the commissioners shall establish at least one precinct for every one thousand registered electors." Colo. Sess. Laws 1963, Ch. 118, Art. 8, Sec. 101.

Admittedly, the latter statute was not followed in the election in dispute. Nowhere in the Metropolitan Recreation District Statute do we find that the district board had any discretion as to the number of polling places. The statute is mandatory in this regard and failure to follow it voided the election.

Reversed.

Mr. Justice Frantz specially concurs.

Mr. Justice McWilliams dissents.

Mr. Justice Frantz specially concurring:

I subscribe to all that is said in the majority opinion.

But the majority opinion, in my view, does not go far enough; it answers only one question. I would resolve the issue raised by plaintiffs in error: Was the Brighton Blade a newspaper of "general circulation" within the meaning of the applicable statute?

C.R.S. '53, 89-12-2(6), provides for "three consecutive weekly publications in at least one newspaper of general circulation in the district." The determination of whether a newspaper is one of general circulation is ordinarily a question of fact. *Board of County Comm'rs v. Greensburg Times*, 215 Ind. 471, 19 N.E.2d 459.

In order to be a newspaper of general circulation, certain tests must be met. Perhaps the best definitive statement appears in the case of *Burak v. Ditson*, 209 Iowa 926, 229 N.W. 227, 68 A.L.R. 538:

"A study of the decisions bearing on the question before us suggests the following criteria: First, that a newspaper of general circulation is not determined by the number of its subscribers, but by the diversity of its subscribers. Second, that, even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of 'general circulation.' "

The last cited case was approved in *Eisenberg v. Wabash*, 355 Ill. 495, 189 N.E. 301, and the language quoted was adopted in the case of *State v. Board of County Comm'rs*, 106 Mont. 251, 76 P.2d 648. Not as incandescently clear but containing the substance of the *Burak* tests is the definition given in *In Re House Resolution*, 50 Colo. 71, 114 Pac. 293.

Mr. Justice McWilliams dissenting:

I dissent. Traditionally courts have been reluctant to invalidate elections once held unless there be a showing of misconduct of such a nature as would change the

result thereof. The general rule, as I understand it, is that in the absence of fraud an election once held will not be overturned merely because of technical irregularity in connection therewith.

In the instant case, there is no suggestion that there was any fraud attendant to the special bond election. Furthermore, Mary Rector does not contend that any ineligible voter was permitted to vote. Nor does she intimate that any eligible voter was prevented from voting because of the fact that there was only one voting place. It is in this setting that the majority have voided this election and thereby set aside the expressed will of the electorate because of what I deem to be technical irregularity in the conduct thereof.

Recognizing that the "irregularity" with which the court was concerned in *Kelly v. Novey,* 136 Colo. 408, 318 P.2d 214, is different from the "irregularity" with which we are concerned in the instant case, I nonetheless regard the majority opinion to be out of tune with the rationale expressed therein. See also, in this regard, 18 Am. Jur. pp. 251-252; *Kerlin v. City of Devils Lake,* 25 N. Dak. 207, 141 N.W. 756; and *Armantrout v. Bohon,* 349 Mo. 667, 162 S.W.2d 867.

Finally, attention is directed to 29 C.J.S. pp. 553 and 554, where it is stated that statutory regulations governing the place of voting are subject to strict enforcement and may be construed as mandatory *before* the election, but that *after* the election such regulations are ordinarily construed as directory and that an irregularity in this regard ought not to render an election void, especially when it appears that no one was prevented from voting at such election.