No. 96-407

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

MONTANANS FOR PROPERTY RIGHTS, INC.,
a non-profit corporation; HENRY BROERS;
CHARLES TUSTIN; DARRELL OLSON; DAVID
LIETZ; BARB LIETZ; JIM DOWLING; RAYMOND
"RAY" SERRA, SR.; CAROL DUVAL; RUSS
CROWDER; RON RABIDUE,

        Plaintiffs and Appellants,

   v.

BOARD OF COUNTY COMMISSIONERS OF
FLATHEAD COUNTY, MONTANA,

        Defendant and Respondent.



FILED

JAN 28 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
                 In and for the County of Flathead,
                 The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Gerald J. Neeley, Attorney at Law, Billings,
            Montana

        For Respondent:

            Jonathan B. Smith and Dennis J. Hester, Deputy
            Flathead County Attorneys, Kalispell, Montana

                        Submitted on Briefs: October 31, 1996

                                Decided: January 28, 1997

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Montanans For Property Rights, Inc., a nonprofit corporation, Henry Broers, Charles Tustin, Darrell Olson, David Lietz, Barb Lietz, Jim Dowling, Raymond "Ray" Serra, Sr., Carol Duval, Russ Crowder, and Ron Rabidue (collectively, MPRI) appeal from the judgment entered by the Eleventh Judicial District Court, Flathead County, on its orders granting the motions for summary judgment filed by the Board of County Commissioners of Flathead County, Montana (Commissioners), and denying MPRI's cross-motion for partial summary judgment. We affirm.

The issue on appeal is whether the District Court erred in granting the Commissioners' motions for summary judgment. In order to resolve that issue, we address the following subissues:

a. Did the District Court err in concluding that planning board documents which are readily available to the public need not be on file at the Flathead County Clerk and Recorder's office?

b. Did the District Court err in concluding that freeholder protests were properly counted pursuant to § 76-2-205(6), MCA?

c. Did the District Court err in concluding that § 2-6-109, MCA, prohibited the Flathead County Clerk and Recorder from providing MPRI with a list of freeholder names and addresses?

2

d.   Did the District Court err in concluding that the Commissioners were entitled to judgment as a matter of law on MPRI's claim that the *Hungry Horse News* and the *Bigfork Eagle* are not newspapers of general circulation?

e.   Did the District Court err in concluding that the zoning regulations were validly adopted under Title 76, Chapter 2, Part 2, MCA?

## FACTS AND PROCEDURAL BACKGROUND

In 1973, the Commissioners established the Flathead County Planning Board (Planning Board) to advise them regarding land use issues in Flathead County.  Five years later, the Planning Board proposed the first Flathead County Comprehensive Plan, which divided Flathead County into neighborhood planning units and provided general guidance for resolving land use issues.

In September of 1986, the Planning Board gave notice that it would hold a hearing to receive public comments regarding a revised comprehensive plan, the so-called Flathead County Comprehensive Plan Update.  The notice specified that copies of the revised comprehensive plan were available for public review at the Flathead Regional Development Office (FRDO).  The Planning Board held the public hearing and subsequently recommended that the Commissioners adopt the revised comprehensive plan.

On February 5, 1987, the Commissioners passed a resolution of intention to adopt the revised comprehensive plan; they caused notice to be published that the resolution had been passed.  The Commissioners subsequently adopted the revised comprehensive plan and, thereafter, referred to it as the Flathead County Master Plan (FCMP).

3

The FCMP encourages communities in Flathead County to develop "neighborhood" plans if they experience unique problems, face special issues, or desire to more adequately plan for growth in the future. Based on that recommendation, some residents of Canyon Area communities in Flathead County formed a committee, the Canyon Citizen Initiated Zoning Group (CCIZG), to guide the planning process for those communities. The Canyon Area is a long, narrow band of land in Flathead County located generally west and south of Glacier National Park.

CCIZG hired a consultant to assist in developing a neighborhood plan and land use regulations for their communities and, together, they drafted proposed land use regulations and a neighborhood plan (Canyon Plan) for the three land use regions in the Canyon Area--the Lower Canyon Region (Lower District), the Middle Canyon Region (Middle District), and the Upper Canyon Region (Upper District). Thereafter, the consultant held fifteen public meetings to receive comments on the Canyon Plan and land use regulations. CCIZG then presented the Canyon Plan to the Planning Board for review and the Commissioners subsequently passed a resolution adding the Canyon Plan to the FCMP.

CCIZG and its consultant then drafted zoning regulations for the Canyon Area communities based on the Canyon Plan. They held nine public meetings to discuss the proposed zoning regulations, which were referred to as the Canyon Area Land Use Regulatory System (CALURS). Following the public meetings, CCIZG presented

4

the CALURS to the Planning Board for its review and recommendation that the Commissioners adopt the CALURS.

The agenda for the Planning Board's September 14, 1994, meeting included a discussion of the proposed CALURS and a notice regarding this meeting was published on August 25, 1994. The notice stated that copies of documents pertaining to agenda items, such as the CALURS, were available for public inspection at the FRDO. The Planning Board received public comments on the proposed CALURS at its September meeting and passed a motion to discuss the CALURS further at its next meeting, scheduled for October 12, 1994. At the October meeting, the Planning Board passed a motion recommending that the Commissioners adopt the CALURS.

The Commissioners caused two notices to be published that they would hold a hearing on November 15, 1994, to receive public comments regarding adoption of the CALURS. Following the hearing, the Commissioners passed a resolution of intention to adopt the CALURS and caused notice of passage of the resolution to be published. The notice stated that copies of the proposed CALURS were available for public inspection at the office of the Flathead County Clerk and Recorder (Clerk), the FRDO, and the Commissioners' office. It also stated that persons owning real property (freeholders) within the Upper, Middle and Lower Districts of the Canyon Area could file written protests to the CALURS for a period of thirty days beginning November 24, 1994 (the protest period).

Both proponents and opponents of the CALURS requested a list of freeholders from the Clerk in order to contact them regarding

5

the CALURS. The Clerk refused to provide either group with a list of freeholders, but did allow review of the freeholder list at her office. One of the opponents of the CALURS was Glacier Wilderness Ranch (GWR), a time-share condominium association. The chairman of GWR's board of directors filed a timely protest, purportedly on behalf of each of the approximately six hundred owners of GWR time-share units. The Clerk informed him that each time-share owner was a freeholder entitled to individually protest the CALURS and that he could not protest on behalf of all GWR owners.

After the close of the protest period, the Clerk reported the protest results to the Commissioners. Less than forty percent of freeholders in the entire Canyon Area protested the adoption of the CALURS. When the protests were counted by districts, less than forty percent of freeholders in the Upper and Middle Districts, but more than forty percent of freeholders in the Lower District, of the Canyon Area protested the adoption of the CALURS. Based on those percentages, the Commissioners adopted the CALURS for the Upper and Middle Districts of the Canyon Area.

MPRI filed a complaint for injunctive and declaratory relief on September 30, 1994, seeking to invalidate the Commissioners' adoption of, and amendments to, the FCMP and certain zoning regulations adopted thereunder. In answering the complaint, the Commissioners asserted that MPRI lacked standing to bring the lawsuit and was not entitled to injunctive or declaratory relief; they also pled the affirmative defenses of laches and the statute of limitations.

The Commissioners moved for summary judgment contending that laches precluded MPRI from challenging certain of their actions, no genuine issue of material fact existed and they were entitled to judgment as a matter of law on the nine counts contained in MPRI's complaint. MPRI opposed the Commissioners' summary judgment motion and filed a cross-motion for partial summary judgment. Thereafter, the District Court permitted MPRI to file an amended complaint and the Commissioners filed their answer.

In March of 1995, the District Court heard oral argument on the parties' summary judgment motions. On August 16, 1995, the District Court granted the Commissioners' motion for summary judgment on issues in the original complaint not amended by the amended complaint and denied MPRI's cross-motion for partial summary judgment.

On August 30, 1995, the Commissioners moved for summary judgment on the remaining issues in the amended complaint. MPRI opposed the motion. After oral argument, a stipulation by the parties that no issues of fact remained and supplementary memoranda, the District Court granted the Commissioners' motion for summary judgment and, thereafter, entered judgment in their favor. MPRI appeals.

Additional facts are provided below as necessary for our resolution of the issues before us.

### STANDARD OF REVIEW

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter

of law. Rule 56(c), M.R.Civ.P. We review a district court's grant of summary judgment de novo, applying the same Rule 56(c), M.R.Civ.P., criteria used by that court. Jarrett v. Valley Park, Inc. (Mont. 1996), 922 P.2d 485, 487, 53 St.Rep. 671, 672 (citation omitted). Ordinarily, such a review requires that we first determine whether the moving party met its burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Jarrett, 922 P.2d at 487.

In this case, MPRI does not contend that genuine issues of material fact precluded summary judgment on the Commissioners' first motion and the parties stipulated to the absence of genuine issues of material fact regarding the Commissioners' second summary judgment motion. We must determine, therefore, whether the District Court erred in concluding that the Commissioners were entitled to summary judgment as a matter of law. We review a district court's conclusions of law to determine whether they are correct. See Estate of Brooks (Mont. 1996), 927 P.2d 1024, 1026, 53 St.Rep. 1263, 1264.

## DISCUSSION

The overall issue on appeal is whether the District Court erred in granting the Commissioners' motions for summary judgment. In resolving that issue, we address each subissue raised by MPRI separately below.

> a. Did the District Court err in concluding that planning board documents which are readily available to the public need not be on file at the Clerk's office?

8

MPRI argues that, because the CALURS proposal and the published notice of the September 14, 1994, public hearing regarding it were not on file at the Clerk's office before the Commissioners took action on them, the zoning regulations adopted thereunder are not valid. The Commissioners contend that § 7-5-2131, MCA, does not require that the specified documents be kept at the Clerk's office and, moreover, that they were readily available to the public at the FRDO.

At the outset, we note MPRI's two-sentence "argument" on this issue, each sentence merely quoting statutory language without analysis or application to the facts of this case. We caution counsel that while such a presentation may constitute minimal compliance with the Rule 23(a)(4), M.R.App.P., requirement regarding citation to authorities in support of a party's legal contentions, it does not suffice to establish the correctness of those contentions.

The general operations and conduct of local governments are governed by statute in Montana. Title 7, Chapter 5, Part 21, MCA, sets out the requirements for conducting county government business. Section 7-5-2129, MCA, requires that boards of county commissioners maintain a minute book, a road book, a franchise book and a warrant book. All records kept in these four county books must be available for public inspection, free of charge, at the Clerk's office. Section 7-5-2131, MCA. It is clear, under the facts of this case, that of these four books, MPRI's argument could relate only to the minute book, which is a record of all decisions

and orders made by the board of county commissioners at regular and special meetings.  Section 7-5-2129(1), MCA.  We must determine, then, whether the CALURS or the related notice are "decisions and orders" made by the Commissioners.

The CALURS was drafted by CCIZG and its consultant and presented to the Planning Board, a board organized to advise the Commissioners on zoning and other land use planning matters, for review.  CCIZG and the Planning Board work with the Commissioners in an advisory capacity only.  They are not part of the board of county commissioners and their decisions are not "orders and decisions" made by the Commissioners as contemplated by § 7-5-2129(1), MCA.  As a result, we conclude that § 7-5-2131, MCA, does not require that the CALURS proposal be kept at the Clerk's office and open for public inspection there.

Nor does § 7-5-2129, MCA, require that the Commissioners maintain a copy of all published notices relating to their decisions or prospective decisions in the minute book.  Such notices are not "orders and decisions" of the board of county commissioners pursuant to § 7-5-2129(1), MCA; they are indications to the public of such decisions and prospective decisions which are separately required by law.  MPRI advances no argument that actual decisions or orders of the Commissioners relating to the CALURS were not properly reflected in the minute book required by § 7-5-2129(1), MCA, and maintained in the Clerk's office pursuant to § 7-5-2131, MCA.  Thus, we conclude that MPRI has not established a failure to comply with § 7-5-2131, MCA.

10

MPRI also contends that §§ 76-2-205(1)(d) and (5)(c), MCA, require that the CALURS proposal and the related notice be on file for public inspection at the Clerk's office. It did not raise this theory in the District Court, however, and it is well-settled that we will not address on appeal issues not presented to the trial court. See Tisher v. Norwest Capital Mgt. & Trust (1993), 260 Mont. 143, 156, 859 P.2d 984, 992 (citing Duensing v. Travelers Co. (1993), 257 Mont. 376, 386, 849 P.2d 203, 209). Therefore, we decline to address this contention.

We hold that the District Court did not err in concluding that planning board documents which are readily available to the public need not be on file at the Clerk's office.

> b. Did the District Court err in concluding that freeholder protests were properly counted pursuant to § 76-2-205(6), MCA?

MPRI contends that the District Court erred in upholding the Clerk's method of counting the GWR condominium owners as six hundred freeholders entitled to protest, but counting the GWR protest as only one protest. MPRI maintains that this procedure skewed the results so that less than the statutorily-mandated percentage of freeholders protested, resulting in the adoption of the CALURS for the Upper and Middle Districts of the Canyon Area.

Rule 23(a)(4), M.R.App.P., requires that an appellate argument contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." MPRI cites to no statute, case, treatise, or other legal authority

11

whatsoever in support of its contentions on this issue. Therefore, we decline to address it.

c. Did the District Court err in concluding that § 2-6-109, MCA, prohibited the Clerk from providing MPRI with a list of freeholder names and addresses?

MPRI contends that the Commissioners and their agent, the Clerk, arbitrarily refused to provide it with a list of freeholder names and addresses. The Commissioners maintain that § 2-6-109, MCA, expressly prohibits the Clerk from providing a mailing list to anyone during the § 76-2-205(5), MCA, protest period.

Section 2-6-109(1), MCA, generally provides that:

(a) an agency may not distribute or sell for use as a mailing list any list of persons without first securing the permission of those on the list; and

(b) a list of persons prepared by the agency may not be used as a mailing list except by the agency or another agency without first securing the permission of those on the list.

Section 2-6-109(2), MCA, defines "agency" and it is undisputed in this case that the provisions of § 2-6-109(1), MCA, apply to the Clerk as an officer of Flathead County.

It also is undisputed that the list of freeholder names and addresses maintained by the Clerk is a "list" which, pursuant to § 2-6-109(1), MCA, cannot be distributed, sold or used as a mailing list without the permission of all freeholders on the list. MPRI contends, however, that the nature of its intended use of the list was not discussed when the list was requested.

The record, however, reflects the following testimony by the GWR manager during the summary judgment proceedings:

12

> Q: Had you earlier asked her on the telephone conversation whether or not you could have a list of landowners for purposes of any protest?
>
> A: Yes, I did. I asked her specifically, I says, I'll trade you. If you want my list, I'll trade you for the list that you have of the upper canyon. It interests me to notify these people that they can protest.

This testimony indicates that MPRI discussed its intended use of the list to "notify" freeholders regarding their protest rights at the time the list was requested. The GWR manager also testified that he requested the freeholder list so that he could send a "protest form out to every landowner, every freeholder on the list in the upper canyon area and [he] would not have used it for any other purpose but to notify them of County action against their property." This testimony establishes that the clear intent was to use the list as a mailing list to send out forms protesting adoption of the CALURS. On the basis of this record, we conclude that § 2-6-109(1)(a), MCA, prohibited the Clerk from providing the list of freeholders to MPRI without securing the statutorily-required permission and that MPRI intended to use the list as a mailing list in violation of § 2-6-109(1)(b), MCA.

MPRI also contends that the Clerk's refusal to provide it with a list of freeholder names and addresses violated the protest provisions contained in § 76-2-205(6), MCA. Section 76-2-205(6), MCA, provides that "if 40% of the freeholders within the district whose names appear on the last-completed assessment roll . . . have protested the establishment of the district or adoption of the regulations, the board of county commissioners may not adopt the resolution . . . ." The statute merely sets out the percentage of

13

protests required to prevent the Commissioners from adopting a resolution establishing a district or zoning regulations. It does not relate in any way to a proponent or opponent's ability or inability to obtain a list of freeholders on the most recent assessment roll; nor does the Clerk's refusal to provide the list prevent or impair freeholders from filing written protests under § 76-2-205(5)(d), MCA. We conclude that the Clerk's refusal to provide MPRI with a list of freeholder names and addresses did not violate the protest provisions contained in § 76-2-205, MCA.

Finally, MPRI contends that, to the extent § 2-6-109, MCA, prohibited the Clerk from providing the list of Canyon Area freeholders, the statute violated its constitutional rights. In particular, MPRI cites to the following sections of Article II of the Montana Constitution:

§ 4, which provides that "[n]o person shall be denied the equal protection of the laws";
§ 6, granting Montana citizens the right to petition for redress or to peaceably protest governmental action;
§ 8, granting the public the right to expect governmental agencies to afford a reasonable opportunity for citizen participation in the operation of such agencies; and
§ 9, providing the public with the right to examine documents.

MPRI presents no analysis of its contentions in this regard within the customary constitutional framework. It merely cites to the sections of the Montana Constitution without providing any rationale or authority under which the statute--or the Clerk's reliance on the statute--violated the referenced constitutional provisions. "[W]hen considering the constitutionality of a statute, the constitutionality is presumed and anyone attacking the

14

validity of a statute has a heavy burden of proving the invalidity." Associated Students v. City of Missoula (1993), 261 Mont. 231, 235, 862 P.2d 380, 382 (citations omitted). MPRI's bare citations to the Montana Constitution do not meet the heavy burden required to prove that § 2-6-109, MCA, is constitutionally infirm.

We hold that the District Court did not err in concluding that § 2-6-109, MCA, prohibited the Clerk from providing MPRI with a list of freeholder names and addresses.

> d. Did the District Court err in concluding that the Commissioners were entitled to judgment as a matter of law on MPRI's claim that the *Hungry Horse News* and the *Bigfork Eagle* are not newspapers of general circulation?

MPRI argues that certain notices regarding proposed amendments to Flathead County zoning regulations are invalid because they were published in the *Bigfork Eagle* and the *Hungry Horse News*, and that those newspapers are not "newspapers of general circulation" as a matter of law. The Commissioners contend to the contrary. There is no factual dispute regarding the business operations of these two newspapers.

Section 76-2-205, MCA, requires that notices regarding public hearings on proposed zoning regulations and passage of resolutions of intention to adopt such zoning regulations must be published once a week for two weeks in a newspaper of general circulation within the county. While the legislature did not define the term "newspaper of general circulation," this Court has addressed the statutory term on several occasions.

15

In *State v. Board of County Com'rs* (1938), 106 Mont. 251, 76 P.2d 648, we set out the criteria for determining whether a newspaper is one of general circulation.

> "First, that a newspaper of general circulation is not determined by the number of its subscribers, but by the diversity of its subscribers. Second, that, even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of 'general circulation.'" [Citations omitted.]

*Board of County Com'rs*, 76 P.2d at 652 (quoting *Burak v. Ditson* (Iowa 1930), 229 N.W. 227, 228). The following year, we held that the *Bridger Times* qualified as a newspaper of general circulation under the *Board of County Com'rs* criteria because it had been in existence and published for twenty-five years; it had four pages of general news and advertising printed in its own plant; and it was distributed throughout the county. *Shelley v. Normile* (1939), 109 Mont. 117, 124, 94 P.2d 206, 210.

It is undisputed in this case that the *Bigfork Eagle* is published once each week at its plant in Bigfork and has been published since 1976. It contains news and advertising of a general character and interest to the communities in the area. Copies of the *Bigfork Eagle* are delivered to subscribers in Kalispell, Whitefish, Somers, Lakeside, Kila, Hungry Horse, Columbia Falls and Bigfork. Copies are also available at retail outlets in Kalispell, Whitefish, Columbia Falls and Bigfork.

It also is undisputed that the *Hungry Horse News* is published once each week at its plant in Columbia Falls and has been

16

published in Flathead County since 1946. It contains news and advertising of a general character and interest to the communities in the area. Copies of the *Hungry Horse News* are delivered to subscribers in Kalispell, Bigfork, Columbia Falls, Coram, Essex, Hungry Horse, Kila, Lake McDonald, Lakeside, Marion, Martin City, Olney, Polebridge, Somers, West Glacier and Whitefish. Copies are also available at retail outlets in Kalispell, Bigfork, Columbia Falls, Coram, Hungry Horse, Lake McDonald, Polebridge, West Glacier and Whitefish.

The *Bigfork Eagle* and the *Hungry Horse News* have subscribers in numerous communities throughout Flathead County and are available at many Flathead County retail outlets. They carry news of general character and interest to the communities in Flathead County. Thus, they meet the "diversity of subscribers" and "general interest news" criteria set forth In Board of County Com'rs, 76 P.2d at 652. Moreover, like the *Bridger Times* in Shelley, both the *Bigfork Eagle* and the *Hungry Horse News* are printed in their own plants, have been published in--and distributed throughout--the county for twenty years or more, and contain general news and advertising. See Shelley, 94 P.2d at 210.

In support of its contention that the *Bigfork Eagle* and the *Hungry Horse News* are not newspapers of general circulation, MPRI advances definitions of "newspapers of general circulation" and principles relating thereto from other jurisdictions. It does not establish that the underlying statutes in those jurisdictions are

17

identical, or even similar, to § 76-2-205, MCA. Nor does it offer any explanation or rationale regarding how or why the holdings in those cases are more appropriate or correct conclusions pursuant to § 76-2-205, MCA, than our holdings in Board of County Com'rs and Shelley. Indeed, MPRI does not address this Court's cases on the issue, except to assert that they are "woefully out of date." We hold that the District Court did not err in concluding that the Commissioners were entitled to judgment as a matter of law on MPRI's claim that the *Hungry Horse News* and the *Bigfork Eagle* are not newspapers of general circulation.

> e. Did the District Court err in concluding that the zoning regulations were validly adopted under Title 76, Chapter 2, Part 2, MCA?

MPRI and the Commissioners agree that zoning properly can be accomplished under either Part 1 or Part 2 of Title 76, Chapter 2, MCA. MPRI contends that Flathead County zoning regulations enacted after 1987 are invalid under either approach. According to MPRI, post-1987 zoning regulations are invalid under Part 1 because sixty percent of the freeholders affected did not consent to the prerequisite creation of a planning and zoning district or the appointment of a five-member zoning commission pursuant to § 76-2-101, MCA. Alternatively, MPRI contends that the FCMP is not a comprehensive plan as defined in Part 2 and, therefore, zoning regulations could not have been properly adopted thereunder. The Commissioners maintain that all zoning regulations adopted by Flathead County since 1987 have been validly enacted under Part 2, and that the FCMP is "comprehensive" as defined in § 76-1-601, MCA.

18

We address first whether the post-1987 zoning regulations were validly adopted under Title 76, Chapter 2, Part 2, MCA.

A board of county commissioners may adopt zoning regulations for all or parts of its jurisdictional area in accordance with Title 76, Chapter 2, Part 2, MCA, "[f]or the purpose of promoting the health, safety, morals, and general welfare of the people in cities and towns and counties whose governing bodies have adopted a comprehensive development plan for jurisdictional areas pursuant to chapter 1 . . . ." Section 76-2-201, MCA. Part 6 of Chapter 1 discusses master plans and § 76-1-601, MCA, specifically sets out five categories of information that may be included in a master plan: (1) surveys and studies of the area; (2) maps, plats, charts, and descriptive material about the area; (3) reports and recommendations regarding plans for development of the area; (4) long-range development programs for public works projects in the area; and (5) recommendations for the development of trailer courts and mobile home sites. Category 2--maps, plats, charts, and descriptive material--is then broken down into seventeen subcategories that may be addressed in a master plan, including land use, streets and highways, public and private utilities, transportation, parks and recreation, education, and conservation.

The FCMP is a lengthy document addressing the people, economy, agriculture, land use, transportation, public facilities and services, parks, recreation and open space, unit community plans, and implementation of the FCMP for the affected areas of Flathead County. It includes and discusses most of the subjects which,

19

under § 76-1-601, MCA, may be included in a comprehensive development plan. We conclude that the FCMP is a comprehensive development plan, as defined in § 76-1-601, MCA, and that zoning regulations may be validly adopted thereunder pursuant to Part 2.

The Commissioners presented evidence that all of its own and the Planning Board's post-1987 zoning actions have been initiated under Part 2. Seven zoning petitions were entered into evidence at the first summary judgment oral argument, all of which specifically requested zoning under Part 2. Resolutions entered into evidence by the Commissioners specifically state that they were adopted pursuant to § 76-2-205, MCA; Part 2. We conclude, therefore, that the Commissioners' post-1987 zoning regulations were validly enacted under Part 2. As a result, we need not address MPRI's alternative contention that the zoning regulations were not properly adopted under Title 76, Chapter 2, Part 1, MCA.

We have concluded that MPRI has established no error in the District Court's conclusions of law. Therefore, we hold that the District Court did not err in granting the Commissioners' motions for summary judgment.

Affirmed.

_____
Justice

20

We Concur:

_William E. Hunt_

_W. William Leaphart_

_____
Justices