No. 92-526

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

BILL D. TISHER and GAYLE SCHLEVE,
as personal representatives for
VIOLA J. HEATH, Deceased,

        Plaintiffs and Appellants,

-vs-

NORWEST CAPITAL MANAGEMENT & TRUST
CO., INC., Montana,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Robert L. Johnson, Attorney at Law, Lewistown,
                Montana

                J. Douglas Alexander, Attorney at Law, Sidney,
                Montana

        For Respondent:

                Earl Hanson; Hanson & Todd, Billings, Montana

                Walter S. Murfitt; Luxan & Murfitt, Helena,
                Montana

---

FILED

AUG 24 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: April 22, 1993

Decided: August 24, 1993

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Bill Tisher and Gayle Schleve (Tisher and Schleve) appeal from an order of the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to Norwest Capital Management and Trust Co. (Norwest) and denying their motion for summary judgment. We affirm.

The sole issue on appeal is whether the District Court erred in concluding that res judicata barred the claims asserted by Tisher and Schleve.

The facts surrounding this litigation are voluminous but relatively undisputed. Caleb and Viola Heath, longtime residents of Glendive, Montana, worked hard, were frugal, and accumulated considerable wealth during their lifetimes. They had no children, few intimate friends and were not particularly close to their relatives. On March 17, 1976, after consulting with their attorney, Kenneth Haag, Caleb and Viola each executed revocable living trusts leaving the bulk of their respective estates to charitable organizations, including the John Birch Society and the Twentieth Century Reformation Hour. Both trusts named Norwest as sole trustee. On the same date, Caleb and Viola executed "pour-over" wills that named the trusts as the beneficiaries of their residuary estates.

In 1977, Carol and Richard Schleve, Caleb's niece and her husband, moved in with Caleb and Viola. On December 6, 1977, attorney Haag received a letter from attorney Jerome Cate which, on apparent authorization of Caleb and Viola, terminated Haag's

2

services as Caleb and Viola's attorney. On January 5, 1978, Caleb and Viola executed documents entitled "Amendment of Trust Agreement," which benefitted their heirs instead of the charities mentioned above. On that date, Caleb and Viola also executed new wills which benefitted their heirs.

To assist Caleb and Viola in managing their property, they were advised to seek the appointment of First Trust Company of Montana (First Trust) as their conservator. On February 3, 1978, Caleb and Viola filed petitions in the District Court nominating First Trust as their conservator. Two weeks later, Caleb and Viola both executed documents entitled "Revocation of Trust," which purported to entirely revoke the trusts with Norwest.

On February 24, 1978, Norwest, as trustee for Caleb and Viola's trusts, filed an appearance in both of the conservatorship actions. Norwest asserted that Caleb and Viola were legally incompetent to execute either the amendments or the revocations to their trusts. Norwest also sought a protective order restraining all parties from interfering with the trusts until a court had determined the validity of the amendments and revocations.

Following a hearing, the District Court appointed First Trust as conservator of both Caleb and Viola's assets and issued the protective order requested by Norwest. The court reserved for later judicial determination the issues of validity of the purported amendments and revocations.

On April 5, 1978, First Trust, as Caleb and Viola's conservator, filed a complaint against Norwest. Denominated Cause No. 10488A, the complaint alleged that Norwest had improperly

3

converted the assets of Caleb and Viola when it refused to comply with the amendments and revocations of the trusts, and had mismanaged the trusts in violation of Montana statutes. The complaint was later amended, and damages were stated to be $6,500,000.

On July 10, 1978, the District Court granted partial summary judgment for Norwest on the issue of conversion. Regarding the mismanagement claim, the court ordered:

It is further ordered that such remaining part of the Plaintiff's cause as may relate to the issues raised in their petitions filed in Probate Causes No. 10621 and No. 10622 relating to Caleb C. Heath and Viola J. Heath, are hereby dismissed without prejudice, for the purpose of determining those issues in the appropriate conservatorship forms [sic].

On August 17, 1978, Caleb died. Both his March 17, 1976 will and his January 5, 1978 will were filed for probate. The District Court, pursuant to Rule 42, M.R.Civ.P., consolidated the following actions:

- Cause No. 10621 Conservatorship of Caleb
- Cause No. 10622 Conservatorship of Viola
- Cause No. 10650 Petition for Probate of Caleb's 3-17-76 will
- Cause No. 10652 Petition for Probate of Caleb's 1-5-78 will

On December 15, 1980, in the consolidated action, a Joint Petition for Settlement was filed to settle all pending litigation between First Trust, Norwest and Caleb and Viola's heirs. The District Court issued findings of fact, conclusions of law and order approving the settlement on December 30, 1980. Under the settlement, Caleb and Viola's 1976 trusts and wills were acknowledged to be valid and operative. In exchange, the heirs

4

would receive $1,000,000 from the trust monies.

When the settlement was final, Norwest was appointed as Viola's conservator at First Trust's request. Norwest also was named special administrator for Caleb's estate. On April 3, 1981, Norwest filed a combined final accounting as special administrator of Caleb's estate and as trustee for Caleb's trust. No objections were filed. The District Court approved the final accounting and dismissed with prejudice all pending litigation in the consolidated action on May 18, 1981. The final accounting provided that Caleb and Viola's 1976 wills and trusts were valid and operative and distributed Caleb's assets pursuant to the 1976 will and trust. Norwest continued to manage Viola's trust and filed periodic accountings.

Viola died on December 13, 1987. Pursuant to Viola's March 17, 1976, will, Norwest was appointed co-personal representative with Mr. Donald Bouchard. On March 1, 1988, Norwest, as Viola's conservator, filed its final accounting of the conservatorship with the District Court. On March 15, 1988, the court held a hearing on the conservatorship and issued an order approving the final accounting, including leave to distribute the assets of the conservatorship into Viola's probate estate. Viola's co-personal representatives subsequently filed the closing statement in the probate proceeding of Viola's 1976 will on September 14, 1988.

Approximately six months after the closing statement was filed, Tisher and Schleve sought probate of Viola's January 5, 1978 will. Schleve is Caleb's niece and Tisher is Viola's nephew. Norwest contested the 1978 will and the matter was set for trial.

5

As part of a settlement, the parties agreed to admit Viola's 1978 will to probate. At that time, less than $100,000 in assets, those not previously placed in the trust, remained for distribution under Viola's will. Pursuant to Viola's 1978 will, Tisher and Schleve were appointed co-personal representatives of Viola's estate.

Tisher and Schleve, as co-personal representatives of Viola, filed the present action against Norwest on October 10, 1990. The complaint alleged that Norwest failed to distribute the trust assets as provided for in the amended trust or, alternatively, failed to return Viola's assets after receiving her revocation of the trust. They also claimed that Norwest, as Viola's conservator from December 30, 1980, to her death, had breached its fiduciary duty to Viola by mismanaging her estate to its own benefit. Norwest moved for, and was granted, a change of venue to Yellowstone County.

Norwest then moved for summary judgment on the complaint; Tisher and Schleve responded by moving for summary judgment on their claims relating to Viola's amendment and revocation of her trust. The Thirteenth Judicial District Court, Yellowstone County, granted Norwest's motion, denied Tisher and Schleve's motion, and dismissed their complaint in its entirety. This appeal follows.

Did the District Court err in concluding that res judicata barred the claims asserted by Tisher and Schleve?

The District Court initially applied the doctrine of res judicata to Tisher and Schleve's claims concerning the purported amendment and/or revocation of Viola's trust. The court found that Viola was a party to her conservatorship action, Cause No. 10622 in

6

Dawson County, and that Norwest had raised the issue of her competency to execute the amendment and the revocation in that action. The court concluded that the settlement and dismissal with prejudice of Cause No. 10622 in the consolidated action barred relitigation of the validity of the purported amendment and revocation.

The court also determined that Norwest's accountings of its actions regarding the trust estate precluded further litigation regarding Norwest's management of the trust estate. Thus, the court concluded that res judicata barred the breach of fiduciary duty claim as well. We will examine each of the court's conclusions regarding res judicata in turn.

Our standard in reviewing a grant of summary judgment is the same as that initially used by the trial court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is appropriate when the pleadings, depositions, and other documents on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Here, the District Court's summary judgment decisions turned on its legal conclusion that res judicata barred Tisher and Schleve's claims. Our review of legal conclusions is plenary. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

Validity of Viola's Amendment and Revocation of her Trust

The doctrine of res judicata is grounded in the idea that litigation must at some point come to an end. Orlando v. Prewett (1989), 236 Mont. 478, 481, 771 P.2d 111, 113. Thus, a party is

7

prohibited from relitigating a matter that the party has already had an opportunity to litigate. Trader's State Bank v. Mann Farms, Inc. (Mont. 1993), 852 P.2d 604, 611, 50 St.Rep. 509, 513; Whirry v. Swanson (1992), 254 Mont. 248, 250, 836 P.2d 1227, 1228. The four criteria for res judicata are:

> 1) the parties or their privies must be the same;
> 2) the subject matter of the action must be the same;
> 3) the issues must be the same and relate to the same subject matter; and
> 4) the capacities of the persons must be the same in reference to the subject matter and to the issues.

Trader's State Bank, 852 P.2d at 611.

Looking to the first factor, we have defined privies as those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest and, consequently, to be affected with them by litigation; examples are lessor and lessee, heir and ancestor, executor and testator. In re Smith's Estate (1921), 60 Mont. 276, 299, 199 P. 696, 703. Viola was an original party to Cause No. 10622, the conservatorship action in Dawson County; Tisher and Schleve, the personal representatives under Viola's will, are her privies in this action. In addition, the parties agree that Northwestern Union Trust Company, named in early pleadings in the previous litigation, is the same entity as Norwest.

Tisher and Schleve argue that Viola was neither a party to, nor represented by counsel in, the final settlement of the Dawson County consolidated action. We find no evidence of record to support this contention. As explained, Viola was a party to her conservatorship proceeding, Cause No. 10622, which was later

8

consolidated and settled in Dawson County. First Trust was appointed as Viola's conservator on February 27, 1978, and continued to act on her behalf until the settlement in the consolidated action was final. The Joint Petition for Settlement indicates:

> Thereafter, a conference was held by the undersigned attorneys with one of the trust officers for First Trust Company of Billings, Montana, who acts as Conservator for Viola J. Heath. A complete and full disclosure and discussion of the proposed settlement matter was made to First Trust Company as Conservator for Viola J. Heath. . . . After a payment of settlement proceeds, if approved, there will be substantial assets remaining in Trust and outside of the Trust to support Viola J. Heath during her lifetime . . . .

Concerning her legal representation, Jerome Cate represented Viola individually until June of 1978, at which time Robert Stevens appeared on behalf of Viola and her conservator, First Trust. Stevens signed the Joint Petition for Settlement as "Robert L. Stevens, Jr., Attorney for all of the heirs at law indicated on Exhibit "A" hereto and Attorney for First Trust Company of Montana, as Conservator for Viola J. Heath" (emphasis added). Section 72-5-427(3)(s), MCA, provides that conservators have the power to settle a claim by or against the estate or the protected person by compromise, arbitration or otherwise. We agree with the District Court's conclusion that Viola was adequately represented and appeared as a party throughout the litigation. As such, we conclude that the first requirement of res judicata is satisfied here.

The second criterion is also met, as the subject matter of both the previous litigation in Dawson County and the present case

9

concerns the various wills and trusts executed by Viola Heath. Regarding the fourth criterion, the capacities of the parties involved have not changed in the way they relate to the subject matter and issues between them; Viola, either personally, represented by her conservator or through her personal representatives, has asserted a position contrary to that of Norwest regarding the purported amendments and revocations in both actions. See First Bank Missoula N.A. v. District Court (1987), 226 Mont. 515, 521, 737 P.2d 1132, 1135.

The third criterion necessary for application of res judicata, identity of issues, is also met here. In the present complaint, Tisher and Schleve allege that Viola amended and revoked the 1976 trust in 1978 and that Norwest wrongfully refused to honor the amendment and revocation. It is also apparent that the validity of Viola's amendment and revocation of her trust was directly at issue in the conservatorship action and, later, the consolidated action in Dawson County; the record is replete with references to that precise issue.

For example, in Cause No. 10488A, First Trust, as Viola's conservator, made allegations against Norwest nearly identical to those contained in Tisher and Schleve's present complaint. The Dawson County District Court directed that those issues be addressed in the "appropriate" conservatorship action.

Then, in Viola's conservatorship action, Norwest alleged:

That according to the information, belief and knowledge of petitioner, Viola J. Heath at all times material hereto was mentally incompetent to execute the purported AMENDMENT OF TRUST AGREEMENT . . . and the purported REVOCATION OF TRUST . . . .

10

> That petitioner alleges upon information and belief, at all times material hereto, in addition to her inability to manage her property by reason of mental deficiency, physical illness or disability and advanced age, Viola J. Heath was and is subject to undue influence or [sic] persons unknown to petitioner at this time and that undue influence was exercised against said Viola J. Heath in securing her signature on both the purported AMENDMENT OF TRUST and the purported REVOCATION OF TRUST.

On May 22, 1978, at a preliminary hearing in the consolidated case, the District Court stated:

> [h]opefully we can get this issue of competency litigated in the conservatorship in such a way that everybody ought to know where they stand. . . . I want to let 12 good people decide this question as to what the Heaths have done in the past, what, if what they have, and if what they've done is valid, fine, so be it. And if it isn't, then let's find out where we're at. Do we have a trust or don't we have a trust? Are the amendments good? Are the revocations good?

The Joint Petition for Settlement in the consolidated action itself characterizes the dispute as a "determination of the validity of the Caleb C. Heath and Viola J. Heath Revocable Living Trusts dated March 17, 1976, and their respective wills dated the same date." The settlement petition also explained that Norwest's position was that the amendment and revocation were void due to undue influence and mental incompetence, while Caleb and Viola's heirs defended the 1978 amendment, revocation and new will.

It is clear that the issue of the validity of the amendment and revocation of Viola's trust, as referenced in the consolidated action in Dawson County, is the same issue contained in Tisher and Schleve's amendment/revocation claims. Therefore, we conclude that all four elements of res judicata are met with regard to the validity of Viola's 1978 amendment and revocation of her trust.

Tisher and Schleve argue strenuously that Viola's claims

11

concerning revocation and amendment of the trust have never been heard or tried before a court. However, even if true, application of res judicata is not precluded. As we have previously held, res judicata stands for the proposition that a party should not be able to relitigate a matter that the party has already had the opportunity to litigate. First Bank, 737 P.2d at 1134. In First Bank, after a default on a loan and a sale of collateral, First Bank filed a complaint seeking a deficiency judgment against the borrowers. In their answer, the borrowers asserted several affirmative defenses. The parties settled the matter and a stipulation and order of dismissal were filed. Ten months later, the borrowers filed an action against First Bank, alleging fraud and misrepresentation in the making of the loan. First Bank, 737 P.2d at 1133.

This Court concluded that res judicata barred the borrowers from bringing their action against First Bank. Although the borrowers were given the opportunity to litigate the issues raised in their complaint, they instead agreed to stipulate to a dismissal. The effect of a stipulation for dismissal is the same as a judgment on the merits; accordingly, a dismissal is res judicata as to every issue raised in the action. First Bank, 737 P.2d at 1135.

As in First Bank, Viola had the opportunity to litigate the issues surrounding the amendment and revocation of her trust in the consolidated action in Dawson County; she agreed, through her conservator, to settle the matter. The District Court's findings of fact and conclusions of law and order approving the settlement

12

explicitly provided that the 1976 will and trust of Viola C. Heath were "acknowledged to be valid and operative." Tisher and Schleve cannot now complain that "there has been no trial in any court" of Viola's amendment and revocation claim. First Bank, as Viola's conservator, signed the settlement petition and the District Court's Order and Decree became a final judgment. We emphasize that:

> [a] judgment is binding and conclusive between all parties to the suit and their privies and successors in interest, as to all matters adjudicated therein and as to all issues which could have been properly raised irrespective of whether the particular matter was in fact litigated.

Orlando, 771 P.2d at 113. The issues of the validity of the amendment and revocation were, therefore, resolved in the consolidated action, without regard to whether the issues actually proceeded to trial.

Tisher and Schleve also assert that on April 5, 1978, less than two months after Viola's attempted revocation of her trust, First Trust, as her conservator, also revoked her trust and sent a copy of the revocation to Norwest. They characterize First Trust's action as a "confirmation of Viola's revocation of her trust" and maintain that First Trust's revocation somehow survived the settlement in the consolidated action. We disagree.

Without regard to whether First Trust's action is construed as an independent revocation by First Trust or a confirmation of Viola's revocation, it too is barred by res judicata. First Trust's action occurred prior to the Joint Petition for Settlement, which First Trust signed and which confirmed the validity of

13

Viola's 1976 trust without amendment or revocation. Res judicata applies equally to First Trust's alleged revocation of Viola's trust.

We conclude that the District Court did not err in granting summary judgment for Norwest on Tisher and Schleve's claims concerning revocation and amendment of Viola's trust on the basis of res judicata. For that reason, we need not address Tisher and Schleve's arguments concerning their entitlement to summary judgment on those claims.

### Breach of Fiduciary Duty

We now turn to the District Court's conclusion that res judicata barred Tisher and Schleve's claim that Norwest breached its fiduciary duty to Viola. The District Court determined that, because Norwest's final accounting regarding Viola's trust had been approved, all issues regarding the management of the trust were conclusively decided. Tisher and Schleve contend that the District Court's analysis is flawed because it analyzed their claim as a breach of a trustee's fiduciary duty instead of a breach of a conservator's fiduciary duty, as alleged in their complaint.

We agree that the District Court incorrectly characterized Tisher and Schleve's claim, but conclude that the result reached was correct. We have previously affirmed a trial court's result even though it may have been arrived at for the wrong reason. Wolfe v. Webb (1992), 251 Mont. 217, 234, 824 P.2d 240, 250.

Norwest filed its final accounting as Viola's conservator with the Seventh Judicial District Court, Dawson County, on March 1, 1988. No objections were filed. After a hearing on March 15,

14

1988, that court issued an order and decree approving the final accounting and discharging Norwest from its role as Viola's conservator. It expressly provided that the decree was final, conclusive and binding upon all interested parties. No appeal was taken from the order approving the final accounting.

Norwest's final accounting as Viola's conservator is governed by § 72-5-438, MCA (1987), (emphasis added), which provides:

> **Accounts - final and intermediate.** (1) Unless waived by the court, every conservator must account to the court for his administration of the trust annually for the preceding year and also upon his resignation or removal. A copy of the account must be served upon the protected person's parent, guardian, child, or sibling if that person has made an effective request under 72-5-404. On termination of the protected person's minority or disability, a conservator may account to the court or he may account to the former protected person or his personal representative.
>
> (2) Subject to appeal or vacation within the time permitted, an order made upon notice and hearing allowing an intermediate account of a conservator adjudicates as to his liabilities concerning the matters considered in connection therewith; <u>and an order made upon notice and hearing allowing a final account adjudicates as to all previously unsettled liabilities of the conservator to the protected person or his successors relating to the conservatorship</u>.
>
> . . .

Under this statute, the court's order and decree approving the conservator's final accounting adjudicated all previously unsettled liabilities of Norwest to Viola or her successors.

The general rule is that a final settlement of the accounts of a guardian, executor, administrator, conservator, or other trustee judicially determined at a formal hearing of which all interested parties have notice is considered to be a judgment which becomes res judicata. In re Guardianship of Bremer (Neb. 1981), 307 N.W.2d

15

504, 508; In re Conservatorship of Estate of Lindauer (Neb. 1985), 376 N.W.2d 1, 2; see also In re Estate of Counts (1985), 217 Mont. 350, 354, 704 P.2d 1052, 1055. In Bremer, a district court approved the final accounting of a conservator, Mr. Weir, and then appointed Mr. Weir as guardian of the same protected person. After the protected person died, Mr. Weir filed his final accounting as guardian and, at the hearing on that accounting, the heirs claimed that Mr. Weir had breached his fiduciary duty during the period of conservatorship. The Nebraska Supreme Court concluded that res judicata barred the heirs' claim; their failure to object to the conservator's final accounting prohibited them from raising the claim for breach of fiduciary duty at a later date. Bremer, 397 N.W.2d at 508-9.

We reach the same conclusion here. The District Court approved of Norwest's final accounting as conservator on March 15, 1988. This order was neither appealed nor objected to on any grounds. Absent such action, res judicata prohibits Tisher and Schleve from now alleging that Norwest breached its fiduciary duty during the conservatorship.

Tisher and Schleve argue that because only Norwest received notice of the hearing on the final accounting, the District Court's order approving the final accounting cannot be considered a final judgment. We disagree. Section 72-5-438, MCA (1987), requires notice only to "the protected person's parent, guardian, child, or sibling if that person has made an effective request under 72-5-404." Tisher and Schleve are not among those listed in the statute. Nor did they request notice as required by the statute,

16

notwithstanding their knowledge that Norwest had served as Viola's conservator since 1980 and the likelihood that they knew of her death in December, 1987.

Furthermore, as a practical matter, Norwest had no way of ascertaining the identities or addresses of those persons who might wish to receive notice of the conservator's final accounting, absent a request for notice as provided in § 72-5-404, MCA (1987). We conclude that the District Court's order and decree approving the final accounting is a final judgment on all matters concerning the conservatorship.

Tisher and Schleve next assert that Norwest, during the period it served as Viola's co-personal representative, had an obligation to appeal or contest the final accounting, and that its failure to do so gives rise to a claim of breach of fiduciary duty. No such claim was asserted in Tisher and Schleve's complaint; their third claim rested entirely on their allegations that Norwest, as Viola's conservator, breached its fiduciary duty to Viola.

Finally, Tisher and Schleve contend that the District Court's application of res judicata deprived them of their constitutional right to due process. It is well settled that this Court will not address on appeal an issue not presented to the district court. Duensing v. Travelers Co. (Mont. 1993), 849 P.2d 203, 209, 50 St.Rep. 316, 320. This constitutional argument was not presented to the District Court and, therefore, will not be entertained by this Court.

Once there has been a full opportunity to present an issue for judicial decision, the judgment must be accorded finality "else

17

judgments may be attacked piecemeal and without end." First Bank, 737 P.2d at 1135. The order approving the settlement of the consolidated action in Dawson County and the final approval of the conservator's accounting must be accorded finality here. We conclude that the District Court did not err in concluding that res judicata barred Tisher and Schleve's claims against Norwest.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

18

August 24, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Robert L. Johnson
Attorney at Law
507 Montana Bldg.
Lewistown, MT 59457

J. Douglas Alexander
Attorney at Law
P.O. Box 1270
Sidney, MT 59270

Earl J. Hanson
Hanson & Todd
Ste. 215, Transwestern I
404 No. 31st St.
Billings, MT 59101

Walter S. Murfitt
Luxan & Murfitt
P.O. Box 1144
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy