43 A.3d 999

Robert S. COCHRAN, Jr., et al.

v.

GRIFFITH ENERGY SERVICES, INC., et al.

No. 87, Sept. Term, 2011.

Court of Appeals of Maryland.

May 1, 2012.

Edward J. Brown (Law Office of Edward J. Brown, LLC, Ellicott City, MD), on brief, for petitioners.

William Alden McDaniel, Jr. (Adam Thomas Sampson of Law Offices of William Alden McDaniel, Jr., Baltimore, MD), on brief, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and IRMA S. RAKER (Retired, Specially Assigned), JJ.

ADKINS, J.

In this case, we apply the principles of *res judicata* in deciding whether a pair of adult children ("Petitioners") may proceed with a lawsuit against an energy company that spilled heating oil in their parents' home. Their parents ("Cochran Parents" or "Parents") had previously sued Griffith Energy Services ("Griffith"), the same company, and won a judgment after a jury trial.

The Circuit Court for Washington County dismissed the Petitioners' lawsuit, holding, *inter alia*, that Petitioners' claims were barred by *res judicata*. The Court of Special Appeals ("CSA") affirmed in an unreported opinion, reaching only the

*res judicata* issue. Petitioners appealed, and we granted *certiorari* on the following question presented:

> Will Maryland allow a defendant who commits fraud during litigation to continue to escape liability, even when that fraud inflicted actual harm on the victims independent of the litigation, victims who are not owners and do not have the power to test the property? [1]

We will affirm and hold that the Petitioners' claims are barred by *res judicata.*

### Facts and Legal Proceedings

This case is the second iteration of a lawsuit against Griffith Energy Services, arising out of a 2002 fuel oil spill in the basement of the Cochran household. The first lawsuit was filed by the Cochran Parents against Griffith, including claims for negligence and breach of contract. Although Petitioners here were not parties to that suit, Petitioner Elizabeth Ingoe testified at the trial, and Griffith took the deposition of Petitioner Robert Cochran, Jr.

In the course of the first litigation, Griffith had the home tested, in May 2006, and the results showed more than a 300 percent increase in benzene levels. Griffith and its attorneys failed to disclose this information to the Cochran Parents until late 2006. When Griffith made the disclosure, the Cochran Parents amended their lawsuit to include a claim that Griffith fraudulently concealed the contamination levels in the home. The Cochran Parents further alleged that Griffith and its

---

1. In their brief, Petitioners reformulated the question into four:
    A. Did the circuit court err by treating the respondents' dispositive motion as a motion to dismiss, when matters outside the complaint were presented to and relied upon by the court in granting that motion?
    B. Did the circuit court err by holding that the petitioners were barred from instituting suit under the doctrine of res judicata?
    C. Did the circuit court err by holding that the fraud counts were barred because the defendants owed no duty to the petitioners?
    D. Did the circuit court err by holding that the claim for damages is barred?

lawyers had affirmatively misrepresented that the test results showed improvement in the benzene levels.

The Circuit Court granted summary judgment on the fraud claim, opining: "To say the [Cochran Parents] had a right to rely on any representation in such a highly contested and contentious case ... stretches credulity to the point that it no longer exists." The Circuit Court also said the fraud allegations were inadequately pled. The case went to trial on the negligence and breach of contract claims, and the Cochran Parents prevailed. Their jury award, in the low six figures, was affirmed by the CSA in an unreported opinion, filed July 2, 2008. Although the Cochran Parents appealed the summary judgment on the fraud claim, the intermediate appellate court affirmed the judgment of the Circuit Court.

Apparently not satisfied with the verdict obtained by their parents, in May 2009, Petitioners filed suit against Griffith and its attorneys ("Respondents") for fraud and negligent supervision.[2] In their complaint, as facts common to all counts alleged, Petitioners claimed to have suffered "loss of use of the lower portion of the home ... emotional distress, concern, anxiety, and loss of enjoyment of the use of the home, and past, present, and future concern, anguish and anxiety regarding the health effects which may have been inflicted upon them."

Respondents moved to dismiss the lawsuit, and the Circuit Court for Washington County granted that motion in an order filed March 2, 2010. The Circuit Court ruled that Petitioners' claims were barred by res judicata; that Respondents owed Petitioners no duty to disclose the results of the air quality test; and that the Petitioners did not allege any legally cognizable damages.

Petitioners timely appealed to the CSA, raising four issues:
1. Did the circuit court err by treating the appellees' dispositive motion as a motion to dismiss, when matters

---

2. The suit was filed in the Circuit Court for Prince George's County but transferred in 2009 to the Circuit Court for Washington County.

outside the complaint were presented to and relied upon by the court in granting that motion?

2. Did the circuit court err by holding that the appellants were barred from instituting suit under the doctrine of res judicata?

3. Did the circuit court err by holding that the fraud counts were barred because the defendants owed no duty to the appellants?

4. Did the circuit court err by holding that the claim for damages is barred?

In an unreported opinion, the intermediate appellate court affirmed, reaching only the first two issues. First, the court held that the Circuit Court properly treated Respondents' motion as a motion to dismiss, even though it relied on matters outside the pleadings. Second, the court held that Petitioners' claims were barred under *res judicata,* as the three elements of that doctrine were present: Petitioners' claims raised the same issues as the Cochran Parents' lawsuit; Petitioners were in privity with the Cochran Parents; and the first lawsuit was finally adjudicated on the merits.

Petitioners filed a petition for *certiorari,* which we granted on November 18, 2011. *See Cochran v. Griffith Energy Servs.,* 423 Md. 450, 31 A.3d 919 (2011).

### Discussion

In reviewing a lower court's ruling on a motion to dismiss, we must determine whether the court was "legally correct." *See, e.g., Napata v. Univ. of Md. Med. Sys. Corp.,* 417 Md. 724, 732, 12 A.3d 144, 148 (2011). We accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the nonmoving party. *See id.* We also interpret Maryland case law to review whether the lower courts' conclusions were correct as a matter of law. *See, e.g., Montgomery Pres., Inc. v. Montgomery County Planning Bd.,* 424 Md. 367, 372, 36 A.3d 419, 422 (2012).

▮▮▮ The doctrine of *res judicata* "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *R & D 2001, LLC v. Rice,* 402 Md. 648, 663, 938 A.2d 839, 848 (2008) (citations and quotation marks omitted); *see also Anne Arundel County Bd. of Ed. v. Norville,* 390 Md. 93, 106–07, 887 A.2d 1029, 1037 (2005) (same). As we have previously described, the *res judicata* doctrine "embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *Rice,* 402 Md. at 663, 938 A.2d at 848.

As we explained in *Norville:*

> Res judicata protects the courts, as well as the parties, from the attendant burdens of relitigation. This doctrine avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.

*Norville,* 390 Md. at 106–07, 887 A.2d at 1037.

Petitioners argue that *res judicata* should not apply because they were not parties to the first suit and not in privity with their Parents, the plaintiffs in that suit.[3] The CSA rejected this theory, holding that Petitioners were in privity with their Parents. The court relied on *Ugast v. LaFontaine,* 189 Md. 227, 232–33, 55 A.2d 705, 708 (1947), to help define when nonparties in a prior lawsuit are in privity with a party in that lawsuit for purposes of *res judicata:*

---

**3.** Petitioners do not dispute that the other elements of *res judicata* apply.

[T]he term "parties" includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies. So, where persons, although not formal parties of record, **have a direct interest in the suit,** and in the advancement of their interest take open and substantial control of its prosecution, **or they are so far represented by another that their interests receive actual and efficient protection,** any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties. (Citations omitted; emphasis added.)

Applying *Ugast,* the CSA held that Petitioners, based on their pre-existing interest in redressing their exposure to the benzene in the family home, were indeed "so far represented by [their parents] that their interests received actual and efficient protection" in the prior lawsuit. As the court explained:

According to the complaint, [Petitioners] were living in the Cochran home "for substantial periods of time" during the discovery stage of the Cochran Parents' litigation, when the test results were allegedly concealed. They also allege that [Griffith's] remediation efforts deprived them of the ... use and enjoyment of a portion of the home and caused emotional distress and anxiety regarding the home and future health effects. Even when drawing all inferences in the appellants' favor, we must conclude that they were aware of the Cochran Parents' litigation and chose not to intervene.

Indeed, the fraudulent conduct alleged by [Petitioners] was [Griffith's] failure to disclose and misrepresentations regarding the test results **to the Cochran Parents.** Therefore, assuming the truth of the facts in the complaint, appellants were in privity with their parents for purposes of res judicata. (Citation omitted and emphasis added.)

The CSA also relied on its decision in *Douglas v. First Sec. Fed. Sav. Bank, Inc.,* 101 Md.App. 170, 186–87, 643 A.2d 920, 928–29 (1994), which considered a party's "intimat[e] familiar[ity]" with the earlier litigation relevant to the question of

privity. Relying on that precedent, the intermediate appellate court concluded that Petitioners' interests were adequately represented by the Cochran Parents in the first lawsuit. *See also Small v. Ciao Stables, Inc.*, 289 Md. 554, 570, 425 A.2d 1030, 1038 (1981) (binding a nonparty to a judgment because the record demonstrated that he had actual notice of the prior action and that his interests were adequately represented in it).

Before us, Griffith cites *Ugast* and *Douglas* for these same propositions. Our research also reveals other cases that support binding a nonparty to a lawsuit in similar circumstances. *See, e.g., Greenwell v. Am. Guar. Corp.*, 262 Md. 102, 114, 277 A.2d 70, 76 (1971) ("They could have intervened, had they chosen to do so. Having decided not to do so, they cannot now relitigate the same question[.]"); *Reddick v. State*, 213 Md. 18, 30, 130 A.2d 762, 768 (1957) ("There is a well established principle of law that a person who has full knowledge of pending litigation and that it affects, and will determine, his rights, and, who is entitled to appear, but who makes no effort to intervene as a party, and permits a conclusion thereof without objection, such person is concluded by the proceedings as effectually as if he were named on the record."); *see also* John A. Lynch, Jr. & Richard W. Bourne, *Modern Maryland Civil Procedure* § 12.2(c) (2d ed. 2004) ("The notion that a nonparty may be bound by a judgment in a suit he or she knew about and in which he or she might have intervened, but did not do so has been reaffirmed on several occasions. The rule has much to commend it in the sense that it tends to reduce duplicative litigation." (citations omitted)).

The family relationship itself, of course, is a major factor. *See, e.g., Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) ("Although a familial relationship need not, in and of itself, confer privity status, it does constitute an important factor when assessing the preclusive effects of a prior adjudication."); *Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 93 (Alaska 1999) (finding an entire family in privity with one family member where "the claims all derive from the family's common occupancy and are essentially identical" to the claim the

first member advanced, where the family knew of the first member's litigation, and one of the other members testified at the first member's trial); *Tisher v. Norwest Capital Mgmt. & Trust Co.*, 859 P.2d 984, 260 Mont. 143, 149 (1993) ("[W]e have defined privies as those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest and, consequently, to be affected with them by litigation[.]"); *Garcia v. Rehrig Int'l, Inc.*, 99 Cal.App.4th 869, 121 Cal.Rptr.2d 723, 728–29 (2002) (holding a child was in privity with his parents, and thus barred from filing a lawsuit, where the parents had previously sued a manufacturer, the child's interests were adequately represented in the prior action, and the child was represented by the same counsel as his parents).

In a case of particular interest, *VanDeWalle v. Albion Nat'l Bank*, 243 Neb. 496, 500 N.W.2d 566, 570, 573–74 (1993), the Nebraska Supreme Court held that two brothers and their parents who managed separate farming operations using each other's farm equipment were in privity with respect to different lawsuits arising from the bank's replevin of the parents' equipment. The court reasoned:

> [T]he facts remain that the parents and sons had a close, mutual relationship with respect to the property and that all three suits arise out of the same occurrence. As noted by one commentator, "it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper." 18 Charles A. Wright et al., Federal Practice and Procedure § 4449 at 418 (1981). Under the circumstances, the entire VanDeWalle clan is in privity for the purposes of these suits.

*Id.* at 573.

Here, the claim in both cases involved the Cochran residence, in which Petitioners resided while they were not in college. *See, e.g., Douglas,* 101 Md.App. at 184–86, 643 A.2d at 927–28 (finding it relevant to privity that an appellant sought a common interest in the prior suit). The same attorney, moreover, represented Petitioners and their parents

in both lawsuits. *See, e.g., Conte v. Justice,* 996 F.2d 1398, 1402 (2d Cir.1993) ("Clearly, the appearance of the same attorney in both actions creates the impression that the interests represented are identical.").

The bedrock of Petitioners' claim is that they were entitled to rely on the alleged misrepresentations and fraudulent nondisclosure by Respondents to the Cochran Parents, with respect to the test results. Thus, the claims by Petitioners in this suit, resting on this alleged fraud, are derived *solely* from their parents' claims, and are thus inextricably intertwined with the claims adjudicated in the first suit. There is no allegation that Respondents made any independent fraudulent statements to Petitioners themselves. This, too, supports privity. The fraud claim was decided in the first suit, and the Circuit Court's grant of summary judgment against the Cochran parents was appealed to the CSA, where it was affirmed. The *res judicata* principles and interpretative cases are apt for the circumstances present here and weigh heavily in favor of finding privity between Petitioners and their parents. This is especially so, as their claim rests on their occupancy of their parents' home not as part owners or tenants but as family members.

Yet, we must consider a counterpoint highlighted by Petitioners at oral argument, relating to a particular facet of that first suit. During oral argument, Petitioners' counsel brought to our attention pretrial statements in the first lawsuit, in which the Cochran Parents declared that they were not seeking damages on behalf of their adult children. This fact seemed quite pertinent, as Petitioners' interests arguably may not have received "actual and efficient protection" when no damages were claimed on their behalf. *See Ugast,* 189 Md. at 232–33, 55 A.2d at 708. Members of our Court pursued this point during Respondents' oral argument, and when Respondents' counsel could not specifically recall their contents, we requested that he furnish copies of the pertinent filings from the first lawsuit, which he did. We shall take judicial notice of

these filings, and discuss them in the next paragraph.[4]

In a motion *in limine* filed in the Cochran Parents' lawsuit, Griffith sought to exclude any evidence pertaining to injuries suffered by the Petitioners, stating:

[Griffith] anticipates that [the Cochran Parents] may attempt to introduce evidence regarding physical or emotional injuries to the [Petitioners]. However, because the children are not parties to the action, any evidence regarding their injuries would not be pertinent to any issues of the case.

Griffith argued that such evidence was irrelevant and inadmissible, and that any probative value it possessed would be substantially outweighed by the danger of unfair prejudice and confusion of the issues. In the same motion, Griffith also sought to exclude any evidence of Petitioners' lost wages and inconvenience, on grounds that Petitioners were not named plaintiffs in the first lawsuit. In their response, the Cochran Parents indicated that they did not "intend to introduce evidence of injuries to [Petitioners]," and that they did not "intend to present any evidence of [Petitioners'] lost wages." The Circuit Court granted Griffith's motion to exclude any evidence regarding "injuries to the Cochran Children" and "lost wages of [the Cochran Parents'] Adult Children."

---

4. This Court is not required to take judicial notice, *see* Maryland Rule 5–201, but may take judicial notice of adjudicative facts about the parties' activities. *See Dashiell v. Meeks*, 396 Md. 149, 176, 913 A.2d 10, 25–26 (2006). With respect to taking judicial notice of proceedings outside the record:

The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of proceedings in another case, even between the same parties, and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness.... But in exceptional cases, as high authority shows, the dictates of logic yield to the demands of justice, and the courts in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation. (Citations and quotation marks omitted.)

*Id.* at 176, 913 A.2d at 26. Both parties acknowledged during oral argument that these pretrial statements bear on the outcome of this case, and we believe that a just result will be best reached by considering them.

At first blush, the Cochran Parents' voluntary omission of evidence regarding Petitioners' damages in the first trial seems to support Petitioners' contention that they were not adequately represented in that lawsuit, thus destroying the apparent privity. Upon fuller reflection, however, we conclude that neither the order nor the filings that preceded it detract from the notion that Petitioners were in privity with their parents. Context is key to our thinking.

The motion *in limine*, the Cochran Parents' response, and the order all occurred within 46 days of trial. At that point, it had been about five years since the oil spill, and Petitioners had plenty of time to intervene in the first case if they wanted to do so. Petitioners' awareness of the first suit is not disputed, and their involvement in that suit, through deposition and trial testimony, is well-documented. When the time came for final pretrial motions, Griffith merely played the hand that the Cochran Parents and Petitioners had dealt it. Knowing that Petitioners were not included in that lawsuit and chose not to intervene, Griffith merely sought to ensure that the parties could try the case that had been pled, by an order excluding evidence of damages to nonparties—that is, Petitioners. The Cochran Parents agreed.

The Cochran Parents' failure to allege or prove damages peculiar to our Petitioners does not mean that Petitioners lacked privity with their parents on grounds that their interests were not protected in the first suit, within the meaning of *Ugast* or the other privity cases. To say that the motion *in limine*, response, and order destroyed the privity between Petitioners and their parents, we would have to ignore the mandate that a litigant assert his rights when he is intimately involved with a lawsuit.

Certainly, there was nothing about the first lawsuit that was at odds with any claim Petitioners' might have had or asserted.[5] Indeed, as we indicated earlier, Petitioners' claims, evolv-

---

5. We do not address Respondents' asserted defenses that they owed no duty of care to Petitioners or that Petitioners suffered no compensable damages.

ing from their intermittent residence in the family home, were inextricably intertwined with those of their parents because they rest on alleged misrepresentations made by Respondents to the Parents, not to Petitioners. If we were to hold that Petitioners could have a "second bite at the apple" after the conclusion of the first suit, we would violate the finality principles underlying *res judicata*. Such a holding would effectively allow the Cochran family to make a strategic decision to exempt themselves from preclusion principles in case they considered the verdict in the first lawsuit insufficient. We bear in mind the observation from the Wright treatise that "it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper." 18A Charles A. Wright et al., *Federal Practice and Procedure* § 4449 (2d ed.2002). Surely, to allow a second litigation against the Respondents on this same issue would contravene the *res judicata* doctrine, which, by design, "avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Norville*, 390 Md. at 107, 887 A.2d at 1037 (citations and quotation marks omitted).

For the reasons set forth, we are convinced that Petitioners are in privity with the Cochran Parents. Privity is the only element of *res judicata* that Petitioners dispute. Thus, the intermediate appellate Court did not err in holding that Petitioners' claim is barred by *res judicata*. We affirm the Court of Special Appeals' judgment on this ground.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**